UNITED STATES of America, Appellee,

v.

Amir SERPOOSH, Zaer John, Pervez Qureshi, Afrin Yousefzai and Ahmad Soltani, Defendants,

Pervez QURESHI and Afrin Yousefzai, Defendants–Appellants.

Nos. 402, 403, Dockets 90–1362, 90–1363.

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1990.

Decided Nov. 27, 1990.

Abraham L. Clott, New York City (The Legal Aid Society, New York City, of counsel), for defendant-appellant Pervez Qureshi.

Howard L. Jacobs, New York City, for defendant-appellant Afrin Yousefzai.

Burton T. Ryan, Jr., Asst. U.S. Atty. for the Eastern District of New York (Andrew J. Maloney, U.S. Atty. for the Eastern District of New York, David C. James, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES, Chief Judge, PIERCE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Pervez Qureshi and Afrin Yousefzai appeal from judgments convicting them of narcotics conspiracy and possession with intent to distribute heroin. Shortly before trial, appellants moved for severance on the ground that their defenses would be so mutually antagonistic that trying them together would deny each his right to a fair trial. We believe the motions should have been granted and reverse.

## BACKGROUND

The government's main case consisted of the following evidence. In April 1989, a confidential informant introduced Drug Enforcement Administration Special Agent Michael Yaniello to Amir Serpoosh. Serpoosh agreed to supply Yaniello with multi-kilogram quantities of heroin on a regular basis. On October 12, 1989, Yaniello purchased one kilogram of heroin and arranged for Serpoosh to deliver an additional kilogram the next day to another agent posing as a runner. On October 13, Serpoosh called the informant and told him that the heroin would be delivered to room 206 of the Golden Gate Motor Inn in Brooklyn later that day.

Special Agent Tina Randall and the informant went to room 206 where they found Yousefzai and told him that they had been sent to pick up the package. Yousefzai informed them that he would go and get "it." On the way out of the motel, Yousefzai asked Randall and the informant if they wanted a "picture"—a code word for a sample of heroin. Yousefzai then went to a car in the parking lot and drove off. About forty-five minutes later, he returned to the Golden Gate parking lot with Qureshi in the passenger seat of the car. Randall got into the back seat. Yousefzai then told Qureshi to pass "it" to Randall whereupon Qureshi handed two plastic bags of what appeared to be heroin to Randall, saying "it is good, it is good, there are two bags there." Randall and another agent then arrested Yousefzai and Qureshi. A search of Yousefzai produced the key to room 206. Qureshi's bag and some of his belongings were found in the motel room. The agents also obtained the motel room registration card, which bore Qureshi's signature. After his arrest, but before anyone had mentioned heroin, Qureshi told the agents that he was a heroin addict and asked for some of the heroin from the package that he had given to Agent Randall.

On October 26, 1989, a grand jury indicted Qureshi and Yousefzai as well as three others on various counts of narcotics trafficking. Before trial the other co-defendants entered guilty pleas, leaving only Qureshi and Yousefzai to stand trial.

On January 22, 1990, after the jurors had been selected and on the very eve of trial, Qureshi's counsel filed a motion to sever his trial from that of his co-defendant Yousefzai. The motion papers contended that a joint trial would be unfairly prejudicial because the defendants planned to present mutually antagonistic defenses. Judge Mishler denied the motion for severance. Qureshi and Yousefzai each testified in his own defense. Each described himself as

the unwitting dupe of the other. In summation, each defense counsel attacked the credibility of the other defendant as well as his version of events.

At the conclusion of the summations, Qureshi's counsel renewed the motion for a severance on the basis of antagonistic defenses, which Judge Mishler again denied. The jury convicted both appellants of conspiracy to possess with intent to distribute heroin, 21 U.S.C. §§ 846 and 841(a)(1), and possession with the intent to distribute more than one kilogram of heroin, 21 U.S.C. § 841(a)(1) and (b)(1)(A). Both appeal on the sole ground that their trials should have been severed.

## DISCUSSION

We first consider whether Qureshi and Yousefzai properly presented their severance claim to the district court.

It was not until the eve of trial that Qureshi's counsel filed a motion to sever his trial from that of Yousefzai. The motion was accompanied by a Memorandum of Law setting forth the conflicting defenses in some detail. It correctly predicted that Qureshi planned to "point[ ] the finger at [Yousefzai] as the knowing participant while portraying himself as an unwitting recruit" and that Yousefzai in turn would cast "himself as the unwitting dupe with [Qureshi] as the knowing participant." Because "[a]t least one of the two men in the black Buick must have been participating in a conspiracy to sell heroin," the Memorandum argued that the jury could not possibly accept both defenses.

At the hearing on the severance motion, Yousefzai's attorney joined in the motion to sever and provided additional details concerning the allegedly antagonistic defenses. He explained that Yousefzai, who was a cab driver, would testify that on the night before the arrest Qureshi offered him two hundred dollars to work for Qureshi and that Yousefzai did not know before the arrest that Qureshi was carrying drugs. Yousefzai's attorney represented that Qureshi would testify that he was unaware of the presence of drugs and that it was Yousefzai "who brought him into the situa-

tion." Appellants thus adequately presented the substance of their claims to the district court.

The timing of the motion gives us pause, however. It is not, or should not be, standard practice to file severance motions after jury selection. However, the jury here was selected on January 9, 1990, the date on which the last co-defendant pleaded guilty. We were told at oral argument that the gravity of the conflict between the defenses was not apparent until the other defendants, who appear to have played a larger role in the conspiracy, were out of the case. Even so, the motion for severance was not made until January 22, the morning the trial was scheduled to begin. Nevertheless, Judge Mishler, while expressing dissatisfaction with the timing of the motion, indicated that he would consider it on the merits. Moreover, counsel expressed a willingness to proceed immediately with separate trials, and the additional time needed for such trials amounted to a little over half a day. Finally, the ruling did affect substantial rights, see Fed.R. Crim.P. 52(b), for reasons stated below. We therefore reach the merits.

We have described the decision to deny a severance as " 'virtually unreviewable,' " *United States v. Stirling*, 571 F.2d 708, 733 (2d Cir.) (quoting 8 J. Moore, *Moore's Federal Practice* ¶ 14.02[1], at 14–3 (2d ed. 1977)), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978), because appellants must show prejudice so severe as to amount to a denial of a constitutionally fair trial, *see United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir.1983), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). Mere antagonism between the defenses is not enough. "The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance." *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir.1990) (citing *United States v. Casamento*, 887 F.2d 1141, 1154 (2d Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990)). Appellants must show "the conflict is so irreconcilable" that acceptance of one defendant's

defense will lead the jury to convict the other. *United States v. Tutino*, 883 F.2d 1125, 1130 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). Severance is required only when " 'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant.' " *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir.1984) (quoting *United States v. Carpentier*, 689 F.2d 21, 28 (2d Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983) (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir.1981))), *cert. denied*, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984). Alternatively, appellants must show that "the jury will infer that both defendants are guilty solely due to the conflict." *United States v. Herring*, 602 F.2d 1220, 1225 (5th Cir.1979), *cert. denied*, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 732 (1980).

■ The instant matter involves just such a conflict between the defenses of each appellant. Qureshi testified to the following. He had become addicted to heroin and needed it every three or four hours. He either purchased the heroin from street dealers to whom Yousefzai had introduced him or had Yousefzai bring heroin to him. Three days before their arrest, Qureshi moved into Yousefzai's apartment. Shortly after he moved in, Yousefzai asked him to rent a motel room for two relatives. On October 12, Qureshi went to the Golden Gate registration desk where he rented the room. By the next evening, he was sick from lack of heroin. Yousefzai offered to obtain some heroin if Qureshi would first act as a translator for Yousefzai and a client who wished to book Yousefzai's taxi. Qureshi agreed. Yousefzai drove Qureshi to the Golden Gate where Yousefzai spoke to a woman. Qureshi simply repeated whatever Yousefzai said and passed the two bags to the woman at Yousefzai's direction.

Yousefzai's testimony contradicted Qureshi's story in all significant respects. According to Yousefzai, Qureshi offered on October 12 to pay Yousefzai $200 to drive Qureshi to the Golden Gate and arranged to meet him there the next day. On October 13, Yousefzai went to Qureshi's room at the motel where Qureshi instructed him to wait for Qureshi's friends to arrive. Qureshi told him that his friends would bring $1,000 and a "picture" of a friend. Qureshi then left. When the informant and Agent Randall arrived and discussed whether or not Yousefzai had "it," how long it would take him to get "it," and how he should deliver "it" in the lobby and not in the room, Yousefzai testified that he thought "it" referred to Qureshi and that he used an inappropriate pronoun because of his confusion with English. After agreeing to go get "it," Yousefzai picked up Qureshi at a prearranged meeting place and brought him to the Golden Gate. Thinking that the informant and Randall were Qureshi's friends, Yousefzai asked them for the $1,000. Qureshi then passed the bags to Agent Randall.

In summation, Qureshi's counsel argued that Yousefzai had arranged for Qureshi to be present at the drug transaction and had planted Qureshi's suitcase in room 206 in order to frame Qureshi. Counsel characterized Yousefzai as a liar. Yousefzai's counsel in turn accused Qureshi of lying and asserted that both defendants could not be telling the truth. He argued that Qureshi had hired Yousefzai to act as a "buffer" between Qureshi and the buyers. Finally, the government's summation contrasted the "theoretical[ ]" possibility that neither of the defendants knew of the drug transaction (i.e., both stories were true) with the "realistic world" in which neither story could be true.

We believe that the prejudice caused by the joint trial is evident. Both defendants gave detailed and mutually exclusive explanations of their conduct on the day of the arrest. The damage done was greatly enhanced by the sparring between counsel for the two defendants in which each characterized the other defendant as a liar who concocted his story to escape blame. There was, therefore, the "substantial prejudice" needed to reverse the denial of a severance motion. *See Potamitis*, 739 F.2d at 790.

Moreover, the main purpose of the rule governing joinder, judicial economy, would not have been seriously frustrated by separate trials. The entire trial of both defendants, almost half of which was devoted to their testimony, lasted just over one day.

The denial of the severance motion was, therefore, error. The convictions are reversed. The appellants of course may be retried.