The appellant, Grady Lee Greathouse, was convicted for the unlawful distribution of cocaine and was sentenced to five years' imprisonment. The appellant raises two issues on this appeal from that conviction.
The State's evidence shows that on November 3, 1990, the appellant sold crack cocaine to Eli Crayton in front of the house trailer residence of the appellant's sister-in-law, Dorothy Faye Greathouse, and her husband, Joe Greathouse. Crayton testified that he approached the residence where the appellant was washing his car in the yard, and that the appellant sold him a "a piece of crack" (R. 119) which the appellant obtained from his sock or from the floorboard of the car in which the appellant was sitting when the sale occurred.
Steven Michael Parrish, the Chief of Police of Jackson Gap, Alabama, testified that the residence had been under surveillance for two months. He stated that from his hidden position in the woods, he saw "Eli take money out and hand it to Grady [the appellant]. Which, in turn, it looked like Grady reached down towards his sock and came back up and handed something to Eli." R. 77.
After the sale, the appellant went inside the trailer. The appellant had been inside the residence only a few minutes at the most when law enforcement officers entered to execute a search warrant. Chief Parrish testified that he observed the appellant "coming down the hall" (R. 78) from the general area where a purse containing crack cocaine was subsequently located. In addition to the appellant, there were two elderly women inside the residence at that time.
During the search of the trailer crack cocaine was discovered inside a purse belonging to Mrs. Greathouse. Marijuana was also discovered inside the residence. Mrs. Greathouse was not present at her residence at the time the cocaine was discovered in her purse but arrived shortly thereafter. The residence was normally occupied by five adults: Mrs. Greathouse and her husband; Shirley Tolbert Greathouse, Mrs. Greathouse's sister, and her boyfriend; and Mrs. Greathouse's mother.
On three occasions prior to the date of this sale, the police had used confidential informants to purchase drugs from this residence, although no purchase involved either the appellant or Mrs. Greathouse. There was testimony that Shirley Greathouse "sold crack cocaine and marijuana." R. 152. There was also testimony that, in connection with these events, Shirley Greathouse pleaded guilty to a charge of possession of marijuana. Police testimony was that this residence was "pretty well known in Jackson Gap as being a drug house," (R. 165) that "[o]ur information was, that you could buy crack cocaine from that residence, and not from any one particular individual, but from several," (R. 172) and that two of the names mentioned were Mrs. Greathouse and Shirley Greathouse. However, there was no evidence or claim of a conspiracy to sell cocaine existing between the appellant and Mrs. Greathouse.
In testifying in her own behalf, Mrs. Greathouse testified that she had seen the appellant sell cocaine. That answer was excluded by the trial court and the jury was instructed to disregard. R. 209. *Page 204 
No cocaine was found on the person of the appellant although there is a reasonable implication that the appellant had additional "rocks" in his possession after the sale to Crayton. See R. 124. The "marked" money Crayton had used to purchase the cocaine was discovered in the appellant's pocket. The appellant did not testify in his own behalf. Apparently, the appellant attempted to present an alibi defense. However, his mother could only testify that although the appellant was home that morning, she "left before he did." R. 247.
 I.
Mrs. Greathouse was separately indicted for unlawful possession of cocaine. Over the written objection of both the appellant and Mrs. Greathouse, the trial court granted the State's motion and the two cases were consolidated for trial. The jury acquitted Mrs. Greathouse of the charge of unlawful possession of cocaine.
The cases were properly consolidated for trial.
 "In Hill v. State, 481 So.2d 419
(Ala.Crim.App. 1985), the Court of Criminal Appeals stated the rule to be as follows:
 " 'The decision whether to grant a severance, or order a joinder of defendants, lies within the broad discretion of the trial court. This Court will not overturn that decision absent an abuse of discretion. . . . "In order to establish an abuse of discretion, the defendant must show that he 'received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection.' " ' See U.S. v. Berkowitz, 662 F.2d [1127] at 1132 [(5th Cir. 1981)]." [United States v.] Webster, 734 F.2d [1048] at 1052 [(5th Cir.), cert. denied, 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984)].
 " ' "When codefendants allege antagonistic defenses as a ground for severance, this Court has applied very specific tests to determine whether the trial was unfair. To compel severance, the defenses must be antagonistic to the point of being irreconcilable and mutually exclusive. . . . The defenses must be so antagonistic that the jury, in order to believe the defense of one defendant, must necessarily disbelieve the other defendant's defenses. . . ." '
" '. . . .
 " ' "There is no more classic situation of the need for a severance than one in which two co-defendants each place the blame for a crime on the other." . . . .
" '. . . .
 " 'We agree that, "antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to case the blame on each other." United States v. Arruda, 715 F.2d 671, 679
(1st Cir. 1983). "Antagonism of defenses requires severance only where the defenses are so inconsistent that the jury would have to believe one defendant at the expense of the other; the conflict alone establishes the guilt of a defendant." United States v. Drougas, 748 F.2d 8, 20 (1st Cir. 1984). "[S]everance is required because of 'mutually antagonistic defenses' only when the defenses are so antagonistic that 'the acceptance of one party's defense will preclude the acquittal of the other.' " United States v. Hendrix, 752 F.2d 1226, 1232 (7th Cir.), cert. denied sub nom., Merritt v. United States, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985).' "
Ex parte Washington, 562 So.2d 1304, 1305-06 (Ala. 1990).
In instructing the jury, the trial court was careful to distinguish the specific charges against each appellant:
 "But, the heart of the case [against the appellant], and the one that the State is going to stand [or] fall on, is their contention that out there in that yard, this sale of cocaine took place. And if they can't prove that, all this other stuff is not going to be sufficient to convict this defendant. The fact that there was marijuana in the house, if there was, or some more cocaine in the house, if there was, that's not what Grady Lee Greathouse is charged with, and that's not what the case depends on. That's the case against Grady Lee.
 "What about Dorothy Faye. They are charging Dorothy Faye with possession of *Page 205 
a controlled substance, cocaine. . . . And, they contend that up there in her house, in her purse, if it was, that there was some cocaine. And that is what they are going to stand [or] fall on. . . . But, this case against Dorothy Faye is going to stand [or] fall on whether or not that was her cocaine in that bag and she knew it was there." R. 266-67.
Here, the jury could reasonably be expected to and in fact did "compartmentalize" the evidence and charges against each defendant. Holsemback v. State, 443 So.2d 1371, 1378
(Ala.Cr.App. 1983). "The test of whether a severance should be granted on the ground of prejudice to the defendants is whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts."Holsemback 443 So.2d at 1378.
 "We recognize that antagonistic defenses may conflict to such a degree that codefendants are denied a fair trial. See, e.g., United States v. Serpoosh, 919 F.2d 835 (2d Cir. 1990). It is not the mere existence of antagonistic defenses that prompts a required severance. Instead, the defenses must conflict to the point of being so irreconcilable as to be mutually exclusive before we will find such prejudice as denies defendants a fair trial. See United States v. Villegas, 899 F.2d 1324, 1346 (2d Cir. 1990); [United States v.] Carpentier, 689 F.2d [21, 28 (2d Cir. 1982), cert. denied, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983)]; United States v. Berkowitz, 662 F.2d 1127, 1133 (5th Cir. 1981). Defenses are mutually exclusive or irreconcilable if, in order to accept the defense of one defendant, the jury must of necessity convict a second defendant. The trial judge should order a trial severance when ' "the jury, in order to believe the core of the testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant." ' Carpentier, 689 F.2d at 28 (quoting Berkowitz, 662 F.2d at 1134
(emphasis added); see also Serpoosh, 919 F.2d at 838; [United States v.] Potamitis, 739 F.2d [784, 790 (2d Cir.), cert. denied, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984)]. Similarly, severance should be granted when antagonism at the essence of the defenses prevails to such a degree — even without being mutually exclusive — that the jury unjustifiably infers that the conflict alone indicated that both defendants were guilty. See Serpoosh, 919 F.2d at 838; Berkowitz, 662 F.2d at 1134. Thus, an adversarial stance by a codefendant clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses."
United States v. Cardascia, 951 F.2d 474, 484-85 (2d Cir. 1991). "Even if defendants attempt to cast blame on each other, severance is not necessarily required." United States v.Arthur, 949 F.2d 211, 217-18 (6th Cir. 1991). "The burden is on defendants to show that an antagonistic defense would present a conflict 'so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' United States v. Davis,623 F.2d 188, 194-195 (1st Cir. 1980). . . ." United States v.Warner, 971 F.2d 1189, 1196 (6th Cir. 1992). See also UnitedStates v. Crotinger, 928 F.2d 203, 206 (6th Cir. 1991). "The so-called 'doctrine of antagonistic defenses' is a narrow one.See, [United States v. Manner, 887 F.2d 317, 326 (D.C. Cir. 1989), cert. denied, 493 U.S. 1062, 110 S.Ct. 879,107 L.Ed.2d 962 (1990)]. It applies only when ' "there is a danger that the jury will unjustifiably infer that this conflict alone
demonstrates that both are guilty" '; it does not apply when 'independent evidence of each defendant's guilt supports the jury's verdict.' United States v. Leonard, 494 F.2d 955, 966
(D.C. Cir. 1974) (citation omitted and emphasis added inLeonard)." United States v. Harrison, 931 F.2d 65, 71 n. 8 (D.C. Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 408,116 L.Ed.2d 356 (1991).
Here, Mrs. Greathouse's testimony would have been admissible against the appellant had each defendant been tried separately because the prosecution had every right to *Page 206 
attempt to show what the appellant did with the other "40s" of crack cocaine (R. 124) he had in his possession after the sale to Crayton. "[T]he jury may consider the accused's conduct before, during, or after the perpetration of the crime."Jones v. State, 473 So.2d 541, 544 (Ala.Cr.App. 1984), reversed on other grounds, 473 So.2d 545 (Ala. 1985). " 'The acts, declarations, and demeanor of an accused, before or after the offense, whether a part of the res gestae or not, are admissible against him. . . .' " Willingham v. State, 261 Ala. 454,458, 74 So.2d 241, 244 (1954). "Evidence as to objects found at or near the scene of the crime charged within a reasonable time and proximity after the commission of the crime is 'always admissible.' " Parker v. State, 587 So.2d 1072, 1090
(Ala.Cr.App. 1991). See also Gratton v. State, 456 So.2d 865,871 (Ala.Cr.app. 1984). "Antecedent circumstances tending to shed light on the criminal transaction or elucidate facts or show preparation to commit the crime are admissible in evidence." Pope v. State, 365 So.2d 369, 373 (Ala.Cr.App. 1978).
 II.
The appellant did not testify at trial. Mrs. Greathouse testified and denied any knowledge of the crack cocaine found in her purse. Her defense was that the appellant placed the cocaine in her purse in order to hide it from the police.
In her closing argument, Mrs. Greathouse's attorney claimed that Mrs. Greathouse was totally innocent and argued that the appellant had placed the cocaine in her purse. Her argument continued:
 "It would be a tragedy, if this woman at 40, is to be convicted of something that a drug dealer [referring to the appellant] has put off on her. We don't have any explanation other than that. But somebody who does have an explanation, and you know who it is, all of us know who it is, didn't give it.
 "DON HARRISON [defense counsel for appellant]: Your Honor, I object —
 "THE COURT: Yes, don't pay any attention to that, ladies and gentlemen, you've heard all the evidence that was proper and admissible and all that you are entitled to, and all that you need. And don't draw any inferences from, what they didn't get. The burden is on the State to prove this case, and I'm not saying they have and I'm not saying they haven't. But, the State has produced the evidence. And there will be no inference whatsoever about what hasn't been proven. That's weakness in the State's case against both of these defendants.
 "DON HARRISON: Your Honor, may we approach the bench.
 "THE COURT: (At the bench out of the hearing of the jury) I know what you are fixing to say, and I think I've just cured it and anything else I do will make it worse.
 "DON HARRISON: Your Honor, I understand, but I need to move for a mistrial.
 "THE COURT: You can, but you understand, the State didn't do this.
 "DON HARRISON: Yes sir, but I would argue to the court that she (Mrs. Greathouse's attorney] has assumed the role of prosecutor when she did that.
 "KATHY SEGLER [assistant district attorney]: And I would argue that the State is not the one that said that.
 "THE COURT: That's right and I am going to deny it. You have it on record." R. 257-58.
Recently, the Alabama Supreme Court reiterated the rule that a prosecutor may not comment on a defendant's right against self-incrimination:
 "A comment on the defendant's failure to testify is to be 'scrupulously avoided.'. . . Where there has been a direct comment on, or direct reference to, a defendant's failure to testify and the trial court does not act promptly to cure the comment, the defendant's conviction must be reversed. . . . Where the comment is an indirect, rather than a direct, comment on the defendant's failure to testify, the conviction must be reversed if there is a close identification of the defendant as the person who did not become a witness."
Ex parte Purser, 607 So.2d 301, 304 (Ala. 1992). *Page 207 
On an issue of first impression in Alabama but on settled authority, we hold that where two or more defendants are joined for trial it is improper for a codefendant's attorney to comment upon a defendant's exercise of his constitutional privilege of self-incrimination by failing to testify at trial.
 "In a criminal trial in a federal court an accused has a constitutionally guaranteed right of silence free from prejudicial comments, even when they come only from a co-defendant's attorney. If an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendants be tried separately.
". . . .
 " '[There are] no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of these constitutional privileges is largely destroyed if persons can be penalized for relying on them.'
 "A fortiori, a defendant in a criminal case, accorded the benefit of the presumption of innocence, should not be penalized for relying on a constitutional right.
 "If comment on an accused's silence is improper for judge and prosecutor, it is because of the effect on the jury, not just because the comment comes from representatives of the State. Indeed, the effect on the jury of comment by a co-defendant's attorney might be more harmful than if it comes from judge or prosecutor."
De Luna v. United States, 308 F.2d 140, 141, 151-52 (5th Cir. 1962). See Annot., 1 A.L.R.3d 989 (1965).
 "When the 'comment' comes from an actor (such as counsel for a codefendant) without an institutional interest in the defendant's guilt, however, it would be inappropriate to find reversible error as a matter of course. Instead, the court should ask whether the comment actually or implicitly invited the jury to infer guilt from silence. See United States v. Badolato, 701 F.2d 915, 924 (11th Cir. 1983) ('De Luna is applicable only when the defenses are based on mutually exclusive theories of guilt.')."
United States v. Mena, 863 F.2d 1522, 1534 (11th Cir.), cert. denied, 493 U.S. 834, 110 S.Ct. 109, 110, 107 L.Ed.2d 72
(1989).
Here, the comment of defense counsel constituted error. That error was not cured by the instructions of the trial court.Ex parte Wilson, 571 So.2d 1251, 1265 (Ala. 1990). See alsoPurser, supra. However, this Court is absolutely convinced that the error in this case was harmless.
We recognize that in certain situations, "[o]verwhelming evidence of guilt does not render prejudicial error harmless under Rule 45, Ala.R.App.P. See Ex parte Johnson,507 So.2d 1351 (Ala. 1986)." Ex parte Lowe, 514 So.2d 1049, 1050
(Ala. 1987). However, in this case the evidence of the appellant's guilt was "virtually ironclad." Buchannon v. State,554 So.2d 477, 482 (Ala.Cr.App.), cert. denied, 554 So.2d 494
(Ala. 1989), overruled on other grounds, Pardue v. State,571 So.2d 333 (Ala. 1990).
"The question a reviewing court must ask is this: absent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" United States v. Hasting, 461 U.S. 499,511, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983). See alsoUnited States v. LeQuire, 943 F.2d 1554, 1566-67 (11th Cir. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 3037,120 L.Ed.2d 906 (1992); Buchannon, 554 So.2d at 481. Here, this Court is absolutely convinced of the appellant's guilt and that the remark of codefendant's counsel was harmless beyond any doubt.
For these reasons the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 208