This appeal arises from the denial by the Morgan Circuit Court of the Rule 32, Ala. R.Crim.P., petition filed by the appellant, Mark Almond Gooch. The parties stipulated that the Morgan Circuit Court would decide *Page 52 
the case based upon affidavits, written interrogatories, depositions, and other submissions in lieu of an evidentiary hearing. After receiving submissions from both parties, the court issued a detailed, six-page judgment finding that the appellant's petition was due to be denied.
The appellant was indicted, along with three codefendants, for the murder of Timothy Craig Morris. Two codefendants were acquitted and the third was found guilty of criminally negligent homicide; the appellant was convicted of manslaughter and was sentenced to 10 years' imprisonment. This Court affirmed the appellant's conviction; the Alabama Supreme Court denied his petition for certiorari review. Although this petition is the appellant's second Rule 32 petition, it is not successive because the first petition was not heard on the merits. Furthermore, the petition is not precluded under Rule 32.2 because this petition raises the issue of ineffective assistance of counsel and is the first petition filed by someone other than the appellant's trial counsel.
The evidence at trial tended to show the following. The appellant, his three codefendants, and Morris attended a party at the house of one of the codefendants on October 15, 1989. Some of the guests at the party testified that Morris had been loud and obnoxious and had bragged about engaging in a fight with four football players where he had used a pool cue as a weapon and had put the football players in the hospital. There was evidence that the appellant and Morris engaged in some sort of "staring" contest. At some point that evening, the appellant, who had stepped outside, asked one of the codefendants to step inside and tell Morris to come outside because he had "smarted off" to the appellant. When Morris got this message, he replied that he was sorry for whatever he had done, that he did not even know the appellant, and that he did not want to fight about it. However, the appellant insisted that they fight, and a fight ensued on the patio. After the fight was broken up, Morris ran down an alley behind the house.
Shortly thereafter, Morris reappeared at the house, holding a stick. There was conflicting testimony as to Morris's behavior at this point. Some witnesses testified that he held the stick in a "karate stance" and that he let out an "old rebel yell." Others testified that they heard Morris say, "Just let me get to my car and I will leave." Whatever the case, when Morris was running toward the street, the appellant and others ran toward him. There was conflicting testimony as to whether Morris swung the stick at his pursuers or merely dropped it. Once the pursuers reached Morris, they pushed him to his knees, kicked him, whipped him, and hit him. There was also conflicting testimony as to where the fight took place. Some witnesses said that it took place on a grassy area and others said it took place on the pavement. All the witnesses agreed that the appellant was the most aggressive attacker. There was testimony that he kicked Morris as if he were kicking a football. One of the codefendants admitted that he had used an aluminum baseball bat in the brawl.
After the fight, Morris lay on the ground unconscious. However, before any of the observers could telephone for an ambulance, Morris awoke, began pacing angrily and refused to let anyone take him to the hospital. To show that he did not need to go to the hospital, Morris did three to five push-ups and began to briskly walk to his apartment, which was a long distance away. A couple of Morris's friends began searching for him, and found him about an hour after he had left the scene. He was in a yard about 150 yards from the scene of the fight. There was testimony that his condition had worsened from when he left the fight — the swelling in his head had increased to the point that he was no longer recognizable. Morris insisted that he be carried home rather than to the hospital. When he got to his apartment, an ambulance was called and it arrived 30 to 40 minutes later. However, he was pronounced dead when he arrived at Decatur General Hospital. The emergency room physician noted considerable trauma to Morris's head, neck, and shoulders, contusions to his trunk, and his abdomen filled with blood.
At trial the appellant and his codefendants raised the defense that an intervening cause rather than their blows had resulted in Morris's death. According to this theory, the *Page 53 
injuries that led to Morris's death were so serious that someone experiencing them could not possibly do push-ups and walk away from the scene as Morris did. Therefore, they maintained, something must have occurred between the time Morris walked from the scene and the time he was found in the yard, such as, for example, a vehicle striking Morris, that resulted in his death.
 I.
The appellant argues that the court denied his right to due process by summarily denying his motions to include certain items in the record and to produce tests on the bloodstains on the victim's shirt and aerial photographs hinges on the theory that these motions sought to place evidence before the court that was essential in deciding his Rule 32 petition. Through his motion to include in the record, the appellant sought to include in the record the following items: the trial transcript of the case-in-chief, all exhibits in the record, transcripts of depositions by Dr. Joseph Embry and forensic scientist Jonathan Kilbourn, an affidavit of criminal trial attorney Thomas Goggins, and correspondence filed with the court. The court denied this motion as to all items except the depositions of Dr. Embry and Mr. Kilbourn. Through his motion to produce, the appellant sought to have stains on the shirt the victim had been wearing when he was killed tested and to produce aerial photographs of the crime scene. This motion was summarily denied.
In arguing that the court arbitrarily denied his motions, the appellant relies on Rule 32.9(a), Ala.R.Crim.P. This provision reads:
 "Unless the court dismisses the petition, the petitioner shall be entitled to an evidentiary hearing to determine disputed issues of material fact, with the right to subpoena material witnesses on his behalf. The court in its discretion may take evidence by affidavits, written interrogatories, or depositions, in lieu of an evidentiary hearing, in which event the presence of the petitioner is not required, or the court may take some evidence by such means and other evidence in an evidentiary hearing."
The appellant does not argue that the mere failure to hold an evidentiary hearing denied him of his right to due process. In fact, the parties in this case stipulated that no hearing would be conducted. Rule 32.9(a) places discretion in the trial judge to forgo such a hearing so long as evidence is received in other manners set out in that provision. In Harper v. State,676 So.2d 949, 950 (Ala.Cr.App. 1995), this Court set out the circumstances under which a judge could forgo a Rule 32.9 evidentiary hearing:
 "[T]he court may properly dispose of those allegations without an evidentiary hearing under one of two sets of circumstances. First, if it has before it 'facts supporting the position of each party [that] are fully set out in . . . supporting affidavits.' Johnson v. State, 564 So.2d 1019, 1021
(Ala.Cr.App. 1989) (relying on Temp. Rule 20.9(a), Ala.R.Cr.P., now Rule 32.9(a), which states, in part, that '[t]he court in its discretion may take evidence by affidavits, written interrogatories, or depositions, in lieu of an evidentiary hearing'). Second, if the events that serve as the basis of the ineffective counsel allegation were observed by the same judge who rules on the Rule 32 petition. Ex Parte Hill, 591 So.2d 462, 463 (Ala. 1991) (wherein the court held that 'a judge who presided over the trial or other proceeding need not hold a hearing on the effectiveness of those attorneys based upon the conduct that he observed'). See also Benefield v. State, 583 So.2d 1370, 1370 (Ala.Cr.App. 1991) (wherein the court noted that meritorious allegations 'warrant either an evidentiary hearing or an adequate explanation for their denial')."
Because a different judge presided over this Rule 32 petition than the judge who presided at trial, the only way for the court to forgo an evidentiary hearing is to consider "facts supporting the position of each party that are fully set out in supporting affidavits."
Thus, the appellant argues that the court's denial of his motions to include and to produce arbitrarily prevented him from being able to "fully set out . . . facts supporting [his] position." The reason for the summary denial of the motion to produce is not reflected in the record. Although the court *Page 54 
attempted to specify the reason for its denial of the motion to include, the written order appears to indicate that the court chose to ignore the deadline that it had previously set:
 "The Petitioner has filed a Motion to Include in the Record and a letter motion dated May 7, 1996, which the Court received on May 9, 1996. Given the previous continuances granted to the Petitioner and the last Order setting a deadline for May 10, 1996, for final submission of all evidentiary materials and briefs the court is of the opinion that the aforesaid Motion and letter motion are not timely submitted and are due to be denied with the exception of the deposition transcripts of Dr. Joseph Embry and Jonathan Kilbourn."
A review of the trial transcript indicates that one of the items requested to be included in the record would have been essential to determining the merit of the appellant's ineffectiveness of counsel claims because the judge who presided over the Rule 32 proceedings was not the trial judge. Furthermore, the affidavit of Thomas Goggins, as the appellant's criminal defense expert, was an integral part of the appellant's case. Therefore, the decision not to consider that evidence deprived the appellant of his ability to fully set out his position as required under Rule 32.9(a).
The record reflects, however, that the court corrected its mistake and ensured that the appellant's position was fully considered. In the order denying the appellant's petition, the judge stated that he had "reviewed and considered" the trial transcript, as well as Mr. Goggins's affidavit. A closer review of the court's order reveals that the judge did consider the arguments and evidence at the trial in making his decision. When discussing why the appellant's trial counsel was not ineffective for failing to timely move for a severance, he referred to the theory raised by all defendants at the trial that some intervening cause, rather than the defendants, was responsible for Morris' death. Furthermore, the judge alluded to Dr. Embry's and Mr. Kilbourn's trial testimony as well as their post-trial deposition testimony. Thus, the order reveals that, despite denying the appellant's motion to include, the judge did, in fact, fully consider the appellant's position.
The record, however, does not show that the judge considered the victim's shirt and the aerial photographs of the crime scene, items requested in the motion to produce. However, because these items were not relevant to the judge's decision, the judge's denial of the motion to produce did not violate the appellant's due process rights. The record reveals that, had the shirt been tested and made available for the judge's consideration, the judge's conclusions would not have changed, regardless of the results of the testing. The judge found that trial counsel's failure to have the shirt tested for stains that could have connected the victim's death to some intervening cause was not deficient because it constituted a valid, strategic decision. According to his affidavit, trial counsel made a conscious decision not to have the shirt tested because he said he was afraid that the results might show that the stains were related to the appellant's actions and that the appellant might be convicted of murder rather than manslaughter. Furthermore, emphasizing that the shirt was not tested might create reasonable doubt in the jurors' minds. The judge properly found that this decision was permissible trial strategy. This Court cannot use hindsight to second-guess trial counsel's decision but must place itself in trial counsel's position at the time the decision was made. Williams v. State,641 So.2d 1305, 1308 (Ala.Cr.App. 1994).
The record reflects that the aerial photographs of the crime scene were likewise irrelevant to the judge's decision. The aerial photographs showed the grassy area where at least some witnesses testified that the fight took place. According to the appellant, these photographs would be relevant to show that it was likely that Morris had been struck by a vehicle and that, therefore, the appellant's blows did not cause his death. He argues that if the fight took place on the grass rather than the pavement, then the asphalt or rubber stains on Morris's shirt would have to be explained by something other than the fight. However, there was conflicting testimony at trial as to whether *Page 55 
the fight took place on the grass or on the pavement. Because there was no evidence that Morris was struck by a vehicle, the only reasonable explanation for the stains on the shirt is that Morris's body impacted the pavement during the fracas. The appellant has not shown how the aerial photographs of the grassy area could possibly change this analysis. Because the judge considered all relevant evidence presented by the appellant, he did not violate the appellant's due process rights.
 II.
The appellant argues that his trial counsel was ineffective for failing to adequately investigate the causes of Morris's death and for failing to request further investigation by forensic experts. As discussed above, part of this argument is that trial counsel failed to test the stains on Morris's shirt. According to Strickland v. Washington, 466 U.S. 668, 689,104 S.Ct. 2052, 2065-2066, 80 L.Ed.2d 674 (1984), there is a strong presumption that such decisions are within the parameters of permissible trial strategy. Furthermore, trial counsel is not required to investigate every "will-o'-the-wisp or rabbit trail matters of mitigation or defense." Patrick v. State,680 So.2d 959, 962 (Ala.Cr.App. 1996). As this court stated in Moore v.State, 659 So.2d 205, 209 (Ala.Cr.App. 1994), "counsel may reasonably avoid presenting evidence or defenses for a number of sound reasons that lead him to conclude that the evidence or defense may do more harm than good." Without other evidence that Morris was struck by a vehicle, trial counsel's fear that testing the shirt would hurt his client's case was reasonable. The appellant cannot overcome the strong presumption that trial counsel's decision not to have the shirt tested was permissible trial strategy.
The appellant also argues that trial counsel was ineffective for failing to interrogate Dr. Embry before trial about the causes of death, for not employing an expert to review Dr. Embry's findings, and for failing to request further post-mortem examinations. Trial counsel did not state in his affidavit why he did not take these actions, and the judge found that his failure to do so was deficient under the first prong of the Strickland analysis. However, the judge found that the appellant had failed to satisfy the second prong ofStrickland, i.e., that the deficient performance of counsel actually prejudiced the appellant.
The record reflects that the judge correctly applied theStrickland standard. According to Strickland, the deficient performance of counsel must have more than "some conceivable effect upon the outcome of the proceeding," and must create a "reasonable probability" of a different outcome. Strickland,466 U.S. at 693, 697, 104 S.Ct. at 2067, 2069. Although trial counsel's performance may have been deficient, the appellant has failed to show that, had trial counsel spoken with Dr. Embry before trial, hired his own experts, and requested further examinations, that there would have been a reasonable probability of acquittal.
The appellant's counsel questioned Dr. Embry extensively at his post-trial deposition. During this deposition, Dr. Embry stated that Morris's physical condition at death was not inconsistent with having been struck by a vehicle and that he could not rule out such a possibility. According to the appellant, had this questioning occurred before trial, the appellant could have better investigated the intervening-cause theory and presented it much more effectively at trial. However, Dr. Embry's statements at his deposition does not establish reasonable probability that the result at trial would have been different. Despite his statements that Morris's condition was not inconsistent with being struck by a vehicle, Dr. Embry never changed his overall opinion that Morris's death had resulted from the fight involving the appellant. This same analysis applies to trial counsel's failure to hire an expert and to request further examination. An expert could conceivably have testified that a vehicle might have been the cause of Morris's death and new examinations could conceivably support such a theory. However, such possibilities fall short of theStrickland "reasonable probability" standard. *Page 56 
 III.
The appellant also claims that his trial counsel was ineffective for failing to timely move for a severance. According to the appellant, his defense at trial was so antagonistic to the defenses of his codefendants that they were irreconcilable and trying his case in the same trial as his codefendants' cases resulted in undue prejudice. Although trial counsel filed no written motion for severance, he made an oral motion either immediately before or during trial at the time the appellant's codefendants renewed their motions for severance. All of these motions were denied by the trial judge. The appellant correctly points out that his trial counsel's oral motion was not timely under Rule 13.4(b), Ala.R.Crim.P. However, there is no indication that, had trial counsel filed a written motion, the trial judge would have granted a severance. Therefore, it appears that, even if trial counsel's failure to file a written motion was deficient, the appellant suffered no prejudice, so as to satisfy Strickland.
Trial counsel's failure to move for severance might constitute deficient performance because the trial judge would not have granted a severance, and because that failure resulted in the issue being unpreserved for appeal. However, it does not appear that the appellant would have been successful in challenging the trial judge's denial of a severance in this case because the defendants' positions at trial were not so antagonistic as to compel a severance. The situation in which a severance of the trials of co-defendants is compelled is very narrow. In Greathouse v. State, 624 So.2d 202, 205 (Ala.Cr.App. 1992), aff'd, 624 So.2d 208 (1993), this Court cited UnitedStates v. Cardascia, 951 F.2d 474, 484-85 (2d Cir. 1991), to identify the standard of when a severance is compelled:
 "We recognize that antagonistic defenses may conflict to such a degree that codefendants are denied a fair trial. See, e.g., United States v. Serpoosh, 919 F.2d 835 (2d Cir. 1990). It is not the mere existence of antagonistic defenses that prompts a required severance. Instead, the defenses must conflict to the point of being so irreconcilable as to be mutually exclusive before we will find such prejudice as denies defendants a fair trial. See United States v. Villegas, 899 F.2d 1324, 1346 (2d Cir. 1990); [United States v.]Carpentier, 689 F.2d [21, 28 (2d Cir. 1982), cert. denied, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983)]; United States v. Berkowitz, 662 F.2d 1127, 1133 (5th Cir. 1981). Defenses are mutually exclusive or irreconcilable if, in order to accept the defense of one defendant, the jury must of necessity convict a second defendant. The trial judge should order a severance when ' "the jury, in order to believe the core of the testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant." ' Carpentier, 689 F.2d at 28 (quoting Berkowitz, 662 F.2d at 1134 (emphasis added)); see also Serpoosh, 919 F.2d at 838; [United States v.] Potamitis, 739 F.2d [784, 790 (2d Cir.), cert. denied, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984)]. Similarly, severance should be granted when antagonism at the essence of the defenses prevails to such a degree — even without being mutually exclusive — that the jury unjustifiably infers that the conflict alone indicated that both defendants were guilty. See Serpoosh, 919 F.2d at 838; Berkowitz, 662 F.2d at 1134. Thus, an adversarial stance by a codefendant clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses."
This case does not involve a situation where the jury inferred merely from the conflict of defenses that all defendants must be guilty. Furthermore, the defenses at trial were not so mutually exclusive that, if the jury were to accept a codefendants' defense, it would necessarily have to convict the appellant. As indicated by the judge, all of the defendants argued that some intervening force, unrelated to the actions of any of the defendants, was responsible for Morris's death. The mere fact that the appellant was convicted of manslaughter while his codefendants were either acquitted or convicted of a misdemeanor is not enough to show that the appellant suffered prejudice from his trial counsel's failure to request a severance. *Page 57 
The appellant, finally, has failed to overcome theStrickland "strong presumption" that his trial counsel's decision not to move for a severance constituted permissible trial strategy. Trial counsel stated in his affidavit that he made a conscious decision not to move for a severance because trying his client jointly with the codefendants was the only way to have an incriminating statement made by the appellant excluded. Trial counsel succeeded in excluding this statement and the appellant was convicted of manslaughter rather than murder. Therefore, the appellant has failed to satisfy either prong of the Strickland test. The judge's dismissal of the appellant's Rule 32 petition is due to be affirmed.
AFFIRMED.
All judges concur. *Page 342