278 So.2d 766

**William Harold SMITHSON**

v.

**STATE.**

**8 Div. 341.**

Court of Criminal Appeals of Alabama.

May 1, 1973.

Rehearing Denied May 29, 1973.

Miles T. Powell, Decatur, for appellant.

William J. Baxley, Atty. Gen., and Andrew J. Gentry, Jr., Auburn, Sp. Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Morgan County, Alabama, indicted the appellant for first degree manslaughter, arising out of an incident which occurred on April 24, 1970, in which the appellant was operating a motor vehicle. The Jury's verdict and judgment fixed punishment at ten years imprisonment in the penitentiary.

At trial, the State presented the testimony of one R. C. Royer, and also Cecil C. Collins, who testified that they were passengers in an automobile being driven by the deceased, Ira M. Pike, on their return from Huntsville, where they were employed at the Arsenal, to Hartselle, Alabama, where they resided. At a point approximately four miles east of Hartselle, the left rear tire of the automobile went flat, and the deceased pulled over on the shoulder to change the tire. One of his two passengers, Mr. Collins, walked east toward Huntsville to set up a light, and the other, Mr. R. C. Royer, assisted in getting the jack out and putting it under the car, while the deceased was loosening the lugs on the wheel. Mr. Royer testified that he saw a White car coming, weaving on the road, and strike the deceased, Mr. Pike, as he was loosening the wheel lugs. The motor vehicle did not stop, and as the next car came by, the two men asked them to follow the vehicle, the White car, and get

its tag number, which was done by a Mrs. Martin, who also testified. The tenor of the State's evidence was that the appellant had been drinking Wildcat whiskey since midmorning of the day in question, and was highly intoxicated, that he was driving at approximately seventy miles per hour at the time his automobile struck the deceased. The appellant did not testify in this case, but offered primarily character witnesses.

## I

On voir dire examination of the jury venire by appellant's counsel concerning their qualifications, the question was asked whether or not any of the venire knew or were acquainted with the following witness in the case: "R. C. Royer that lives in Hartselle." To this question, two jurors indicated that they were acquainted with Mr. Royer, but Mr. Ramon T. Royer, who was a member of the venire, and ultimately served on the trial jury, and was elected foreman thereof, did not answer or indicate knowing the witness, R. C. Royer.

At the conclusion of the trial, appellant's counsel entered the clerk's office as the jurors and witnesses were being paid, and overheard a comment from R. C. Royer to the juror, Ramon T. Royer, in substance, "You have been telling me that for four or five years," and after receiving their pay, the juror and witness left the clerk's office.

Appellant's counsel filed a motion for new trial, calling to the trial court's attention the fact that Ramon T. Royer, who had been selected foreman of the trial jury, failed to answer the question, "Did he know the witness, R. C. Royer." The testimony developed at the hearing established that the two Mr. Royers had served as members of the same jury venire in 1968, but not on the same trial jury, and they felt they were related to some degree. Mr. R. C. Royer testified, "I have never

discussed it with Mr. Ramon T. Royer," and further, "Well, fourth, fifth, maybe sixth cousins, something like that," but stated that they had not seen each other since 1968, nor had they ever visited in each other's home, nor had they had conversation pertaining to the subject at trial in the case at bar. It further developed that the respective grandparents of each Mr. Royer were dead at the time of their respective births, and that they had never established with certainty their blood relationship.

Further, Mr. Ramon T. Royer, the juror, testified that he did not remember Mr. R. C. Royer, when the question was asked of the venire, that he felt he was being truthful in saying that he did not know him as he had not seen him since 1968 and did not recognize him until he took the witness stand as being the "R. C. Royer inquired about."

Appellant's counsel also submitted that during closing argument, the juror, Mr. Ramon T. Royer, made the statement to him, "Could you speak a little softer, sir," and that this distracted him and made him change his argument, and further showed bias on the part of the juror. The juror, Mr. Ramon T. Royer, stated that the case had been going on several days, and the argument had continued for quite sometime, that at the time he did make the statement indicated, but that in response to the question, "Did you decide the case on the evidence, and did the other members decide the case on the facts presented," he responded, "It was decided on the evidence, sir."

Following an extensive hearing on the motion for a new trial, the trial judge made the following finding:

"THE COURT: A jury verdict is a solemn thing in the eyes of the law, and it is not lightly tampered with by a judge, or a court of appeals court, or anybody else. It appears to me that on Grounds

6 and 7 which goes to the issue of the failure of Ramon Royer to answer the questions—the question 'Does anybody know R. C. Royer,' or of like import, that there is no prejudice pertaining there that reflects on the outcome of the case as concerns this defendant as it is defined by the cases as I read them.

"I find that as a matter of fact R. C. Royer knew Ramon Royer, but Ramon Royer didn't know R. C. Royer at the time the question was asked.

"On Grounds 8 and 9 and 10, the closest thing that it comes to that I can think of, is denial of effective assistance of counsel by something that happened in the course of the trial. This seems to be the thrust of the Defendant's argument. Such being the case then it would appear in my mind that this would have to rise to the level of something that calls for a mistrial, or else the defendant would have to make an election, or choose in his mind at that time as to whether he wanted to continue on. I don't find it of such gravity as to say that a mistrial should have been entered even if a motion was made.

"Those being the—those being primarily the only two arguments and theories of the motion for new trial, I am going to enter an order denying the same.

"MR. POWELL: Note our exception.

"THE COURT: All right."

As may be seen, such response, even had it been made, would not have constituted good grounds for challenge for cause pursuant to Title 30, Section 55, Code of Alabama 1940.

In Vickers v. Howard, 281 Ala. 691, 208 So.2d 72, we find:

"Title 30, Section 52, Code 1940, provides:

" 'In civil and criminal cases, either party shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict.'

"We have held that this section has the manifest purpose of the disclosure by every juror as to all material qualifications in order that the parties may exercise advisedly their peremptory challenges. Hayes v. Boykin, 271 Ala. 588, 126 So.2d 91, and cases there cited.

"We have said that counsel are entitled to true and honest answers from prospective jurors. Morris v. Zac Smith Stationery Co., 274 Ala. 467, 149 So.2d 810; McHenry v. State, 279 Ala. 30, 181 So.2d 98."

More recently, the Supreme Court of Alabama, in Freeman v. Hill, 286 Ala. 161, 238 So.2d 330, further defined their opinion in Sanders v. Scarvey, 284 Ala. 215, 224 So.2d 247, as follows:

"In the instant case appellant has not shown that the trial court abused its discretion in determining that there was no probable prejudice to appellant by virtue of these jurors' failure to respond to questions propounded on voir dire. The evidence adduced on this issue supports the findings of the trial court on remandment.

"Although the factors upon which the trial court's determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.

"We are mindful of the heavy responsibility placed on the trial court to main-

tain the statutory right which parties have to a full and truthful disclosure by jurors on voir dire. However, we must also be aware of inadvertent concealment and failure to recollect on the part of prospective jurors.

"To re-emphasize, we say that we will review the trial court's ruling on motion for new trial predicated on jurors' improper answers to (or failure to answer) questions propounded on voir dire only for abuse of discretion in its determination as to probable prejudice."

It is clear from the findings of the trial court that the witness Royer and the juror Royer were distantly related, and that neither was certain of their relationship. Further, they had not seen each other for several years and had never discussed the case at bar. It is also clear that the juror Royer did not recognize the witness Royer until he was actually seated in the witness stand, and this was why he did not respond at the time the question was asked, "Did he know." We are of the opinion that the finding by the trial judge in the case at bar properly applied the standard of Freeman v. Hill, supra, and that such finding is supported by the evidence in this cause. We therefore hold that there was no abuse of discretion by the trial court in denying appellant's motion for new trial on the basis of the failure to answer on the part of the juror, Ramon T. Royer. Cooper v. Magic City Trucking Service, Inc., 288 Ala. 585, 264 So.2d 146; Bruno's Food Stores, Inc. v. Burnett, 288 Ala. 222, 259 So.2d 250; Harris v. Whitehead, 46 Ala. App. 516, 244 So.2d 603; Edwards v. State, 28 Ala.App. 409, 186 So. 582.

We have carefully considered this entire record, being in Two Volumes, consisting of some 450 pages, as required by Title 15, Section 389, Code of Alabama 1940, and find no error therein. The judgment is due to be and the same is hereby

Affirmed.

All the Judges concur.