The appellant was indicted and convicted for robbery and the jury fixed punishment at a term of twenty years in the penitentiary. Judgment and sentence by the trial court were entered accordingly. The appellant was represented by retained counsel at trial. Following his conviction he retained new counsel, filed a motion for a new trial and appealed. The trial court ordered that the appellant be furnished a free transcript pursuant to Code of Alabama 1940, Title 15, § 380 (14)-(25).
At approximately 6:20 on the evening of December 8, 1975, Mrs. Margaret Allen was walking to her automobile in the parking lot of Gayfer's, a department store in the Springdale Plaza shopping mall located in the western part of Mobile, Alabama. She was leaving work and as she walked down the sidewalk she either heard or noticed someone behind her. She felt someone at her neck, turned around and her assailant stuck a knife to her throat and said, "Where's your car?" As they continued walking in the parking lot, Mrs. Allen saw a car approaching and screamed.
Jack W. Sawyer had just parked his car. Upon hearing the scream, he responded and ran toward Mrs. Allen and her assailant. Immediately the assailant threw Mrs. Allen on the ground, grabbed her purse and ran toward a service road. Sawyer did not pursue the assailant when Mrs. Allen "hollered" that he had a knife. The police were notified and arrived within five or ten minutes.
Within minutes, Officer Greg Ginder of the Mobile Police Department had arrested the appellant who was found hiding under a bush near the service road which runs by the shopping mall. Officer Ginder found Mrs. Allen's purse about four feet from the appellant and a knife "up underneath where the defendant was laying in the bush".
Officer Ginder placed the appellant in the patrol car and carried him back to the scene of the crime. Although Mrs. Allen did request that the appellant say something, she did not have any trouble identifying him. Mr. Sawyer separately viewed the appellant in the patrol car. He identified the appellant as Mrs. Allen's assailant from the appellant's physical build and the clothes he was wearing. He could not make a positive identification from viewing the appellant's face.
The appellant took the witness stand and testified in his own behalf. According to his testimony, he met an individual named Paul at Sambo's Restaurant. Paul, whose last name the appellant did not know, merely came in the restaurant, sat down at the appellant's table and asked for a ride. The appellant also testified that one of the Curry brothers introduced him to Paul at Sambo's. After leaving Sambo's they stopped at Springdale Plaza because Paul wanted to stop there and borrow some money from a friend of his. The appellant testified that he saw the man identified as Paul accost Mrs. Allen and rob her. Although fearing that he had been seen in Paul's company, the appellant ran in the same direction Paul did. While Paul quickly left the area on foot, the appellant, afraid that he would be blamed for the incident, hid in the bushes near the service road. It was immediately after this that the appellant was arrested by Officer Ginder.
The appellant testified that Mrs. Allen could not positively identify him when he was taken back to the scene of the robbery. He admitted that the knife was his but stated that he never did see the purse. Paul, he testified, was approximately the same physical build and height as he was and was very similar in appearance.
The appellant has raised two issues on appeal: (1) Whether the use of prior convictions to impeach the appellant violated his right to due process and assistance of counsel where each of those convictions was had without the benefit of counsel; and (2) whether the jury foreman's failure to answer the judge's voir dire questions violated the appellant's right of due process. *Page 389 
 I
On redirect examination of the appellant by his attorney the following exchange occurred:
 "Q. Danny, have you ever been convicted of any crime before?
"A. No, sir.
"Q. Been in anything like that?
"A. No criminal crime like this, no, sir, I have not.
"Q. As a matter of fact, this is the first thing?
"A. Yes, sir."
On recross-examination, the state elicited the following testimony:
 "Q. Now, you say you've never been convicted of any crime, is that right?
"A. Criminal crime, sir.
 "Q. Well, crimes are crimes. Are you saying you've never been convicted of a crime?
"A. I have been convicted of crimes, yes, sir.
"Q. You have been convicted of crimes?
"A. Yes, sir.
"Q. What have you been convicted of?
 "A. Assault and battery, possession of paraphernalia and possession of marijuana.
 "Q. But the fact that assault and battery and possession of marijuana is considered by the State of Alabama as a crime, you don't consider it a crime, is that correct?
"A. It's a crime, yes, sir, but it's not . . ."
And again on redirect by defense counsel:
 "Q. Let me ask you, on the assault and battery, is that the conviction in General Sessions?
"A. Yes, sir.
 "Q. And was that appealed up here to the Circuit Court?
"A. Yes, sir.
"Q. And what happened up here?
"A. I was put on probation for that.
 "Q. All right, sir. How long before this took place was that?
"A. I was 15 years old.
"Q. And how about those possessions?
"A. About two years, a year and a half or two years.
"Q. Ago?
"A. Yes, sir.
"MR. GALLOWAY: That's all.
RECROSS-EXAMINATION
BY MR. PIERSON:
 "Q. You said that you were convicted and put on probation when you were 15?
"A. Fifteen or sixteen.
 "Q. You're 20 years old right now, 23 years old, aren't you?
"A. Yes, sir.
 "Q. Weren't you arrested for assault and battery on April 1, 1974?
"A. But not convicted, no, sir.
 "Q. But you were arrested again for assault and battery. Is that right?
"A. Yes, sir.
"MR. PIERSON: No further questions.
"MR. GALLOWAY: You can step down.
"THE COURT: Step down."
At the hearing on the motion for new trial the appellant testified that all three of the prior convictions were had without the benefit of counsel. Relying on Loper v. Beto,405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) and cases cited therein, the appellant argues that the use for impeachment purposes of prior convictions which are void for failure to afford the accused his right to counsel deprives the appellant or any criminal defendant of due process of law.
Although no objection was had to the action of the state in cross examining the accused, the appellant urges that the use of the prior convictions to impeach the appellant violated his constitutional rights.
In Alabama, the plain error doctrine applies to death penalty cases, but not to other convictions. Stinson v. State,56 Ala. App. 312, 321 So.2d 277 (1975); Tell v. State, 285 Ala. 234, 231 So.2d 107, appeal after remand, 291 Ala. 86,277 So.2d 898 (1970); Coleman v. State, 276 Ala. 513, 164 So.2d 704, reversed 377 U.S. 129, 84 S.Ct. 1152, 12 L.ed.2d 190 (1963). Review in this *Page 390 
court is limited to those matters upon which the action or ruling at the nisi prius proceeding was invoked. While we have previously held that the only exception to this rule is in a case of ineradicable harm, even there the doctrine of "ineradicable harm" or "plain error" applies only to cases wherein the accused may receive the death sentence. CompareAlday v. State, 42 Ala. App. 21, 151 So.2d 220, cert. denied,274 Ala. 718, 151 So.2d 225 (1962) with Jackson v. State,260 Ala. 641, 71 So.2d 825 (1954). It is settled, and a search of the case law so dictates, that this court in searching the record is confined to points on which rulings adverse to the defendant are had in the trial court. Echols v. State,47 Ala. App. 23, 249 So.2d 639 (1971); Stinson, supra.
Despite the lack of objection, the appellant urges that the complained of error was properly raised and preserved by the motion for new trial. Title 7, § 276, Code of Alabama 1940, provides that a motion for a new trial may be granted for: "Error of law occurring at the trial and excepted to by theparty making the application". (Emphasis ours) A motion for a new trial cannot take the place of an objection to the introduction of evidence. Riley v. Srofe, 35 Ala. App. 222,45 So.2d 328 (1950); Prince v. State, 50 Ala. App. 644,282 So.2d 83 (1973). Alleged error in the admission of evidence cannot be raised for the first time on motion for new trial. Smith v.State, 40 Ala. App. 600, 119 So.2d 202, cert. denied, 270 Ala. 741, 119 So.2d 203 (1960); Daly v. State, 47 Ala. App. 681,260 So.2d 412, cert. denied, 288 Ala. 736, 260 So.2d 418, cert. denied, 409 U.S. 874, 93 S.Ct. 123, 34 L.Ed.2d 127 (1972).
The appellant argues that no objection was necessary in this case because the requirements of fundamental fairness far outweigh the state procedural requirements. The function and purpose of objection and exception are to challenge the correctness of the action of the trial court so that such action may be corrected by the court itself, if deemed erroneous. Knight v. State, 273 Ala. 480, 142 So.2d 899 (1962). The state has a substantial interest in the enforcement of this rule. Yet, even so, resort to this rule should not be required where to do so would merely be "an arid ritual of meaningless form". Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564,13 L.Ed.2d 408 (1965). In Henry, the United States Supreme Court held that the Mississippi rule requiring contemporaneous objection to the introduction of illegal evidence serves a legitimate state interest so that the failure to comply therewith will bar federal review of a federal claim with respect thereto, unless under the circumstances, enforcement of the rule would serve no substantial state purpose. The Supreme Court found that the purpose of the contemporaneous — objection rule had been substantially served by petitioner's motion at the close of the state's evidence asking for a directed verdict because of the erroneous admission of the illegal testimony.
 "For at this stage the trial judge could have called for elaboration of the search and seizure argument and, if persuaded, could have stricken the tainted testimony or have taken other appropriate corrective action. . . . In these circumstances, the delay until the close of the state's case in presenting the objection cannot be said to have frustrated the state's interest in avoiding delay and waste of time in the disposition of the case." Henry, at 448, 85 S.Ct. at 568.
Thus we hold that there was no error in the trial court in allowing the state to cross examine the defendant with regard to prior convictions where no objection was made by defense counsel during the trial of the cause.
Additionally we note that the prior convictions were used to contradict the testimony of the appellant given on direct examination and elicited by his own attorney. Thus the appellant cannot be heard to complain that the state, on cross examination, extracted facts inconsistent with his testimony.Davis v. State, Ala.Cr.App., 331 So.2d 807 (1976); McClendon v.State, 54 Ala. App. 327, 307 So.2d 723 (1975); United States v.Jansen, 475 F.2d 312 (7 Cir. 1973). *Page 391 
Where the defendant has taken the stand and testified to the contrary, statements obtained in violation of Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, have long been used for impeachment purposes. Oregon v. Hass,420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Harris v. New York,401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In similar situations, illegally seized evidence may also be used to impeach the contrary testimony of an accused. Walder v. UnitedStates, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed.2d 503 (1954).
The principle announced in Walder is applicable to the instant appeal.
 "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." Walder, at 65, 74 S.Ct. 356.
Here also the appellant should not be permitted to provide himself with a shield against contradiction of his stated or implied untruths.
 II
Subsequent to the judgment in this case, it was discovered by the appellant that the foreman of the jury had been the victim of a crime of violence. Prior to trial, the trial judge specifically qualified the jury as to whether "any member of the jury or any member of the jury's immediate family (had) been the victim of any crime".
It was stipulated by the state and the appellant that the foreman was thirty-six years of age; that when he was sixteen, another person came in a restaurant, beat him with a stick, was prosecuted and was fined either $300.00 or $400.00 for either disorderly conduct or assault and battery. It was also stipulated that when the court qualified the jury, the foreman either did not think of this incident or it did not cross his mind.
At the outset we note that the fact that a juror has been a victim of a crime is not one of the enumerated grounds for challenge for cause pursuant to Title 30, § 55, Code of Alabama 1940. We have previously held that:
 "A failure of a juror to make a proper response to questions regarding his qualifications to serve as a juror, regardless of the situations or circumstances, does not automatically entitle a party to a new trial. The proper inquiry in such cases is whether the defendant's rights were prejudiced by such failure." Sheperd v. State, 57 Ala. App. 35, 39-40, 325 So.2d 551, 555, cert. quashed, 295 Ala. 417, 325 So.2d 557 (1975).
This court will review the trial court's ruling on motion for new trial predicated on a juror's failure to answer questions propounded on voir dire examination only for abuse of discretion in its determination as to probable prejudice.Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970); Smithsonv. State, 50 Ala. App. 318, 278 So.2d 766 (1973).
In Freeman, 286 Ala. 167, 238 So.2d 336, the Alabama Supreme Court stated:
 "Although the factors upon which the trial court's determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.
 "We are mindful of the heavy responsibility placed on the trial court to maintain the statutory right which parties have to a full and truthful disclosure by jurors on voir dire. However, we must also be aware of inadvertent concealment and failure to recollect on the part of prospective jurors."
We are of the opinion that the trial court properly complied with the above principles. *Page 392 
The evidence in this case amply supports the verdict. Worley v.State, 28 Ala. App. 486, 188 So. 75 (1939). There is no evidence to justify a finding of concealment on the juror's behalf. Indeed, the stipulation shows that his failure to answer was unintentional and inadvertent. There is absolutely no evidence whatsoever that the juror was prejudiced or biased either for or against the appellant. In view of these considerations we hold that there was no abuse of discretion by the trial court in denying the appellant's motion for a new trial on the basis of the juror's failure to answer. Smithson, supra, at50 Ala. App. 320, 278 So.2d 766 and cases cited.
We have carefully considered the entire record as required by Title 15, § 389, Code of Alabama 1940, and find no error therein. The judgment is therefore due to be and the same is hereby
AFFIRMED.
All Judges concur.