[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 3 
The appellant, Raymond Eugene Brown, appeals the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P.
This case has a long and complicated procedural history. In 1988 Brown was convicted of four counts of capital murder for the murders of Linda LeMonte and her nine-year-old daughter Sheila Smoke. The four counts included 1) the intentional murder of two or more people during one course of conduct, 2) the intentional murder of LeMonte while Brown was under a sentence of life imprisonment,[1] 3) the intentional murder of Smoke while he was under a sentence of life imprisonment, and 4) the intentional murder of Smoke during the course of sexual abuse. The jury unanimously recommended that Brown be sentenced to death. The trial court accepted its recommendation and found the existence of three aggravating circumstances: that the murders were committed while Brown was on parole for another offense, § 13A-5-49(1), Code of Alabama 1975; that Brown had previously been convicted of a felony involving the use or threat of violence, § 13A-5-49(2); and that the murders were especially heinous, atrocious, or cruel as compared to other capital offenses, § 13A-5-49(8). This Court reversed Brown's conviction based on the *Page 4 
trial court's failure to conduct individual voir dire examination of the prospective jurors. Brown v. State, 571 So.2d 345 (Ala.Cr.App. 1990). The United States Supreme Court vacated this Court's judgment based on its decision in Mu'Min v. Virginia, 500 U.S. 415 (1991), which held that a defendant has no constitutional right to question prospective jurors about the specific contents of media coverage of a case. The case was remanded for reconsideration in light of Mu'Min. Alabama v. Brown,501 U.S. 1201 (1991). On remand, we again reversed the judgment and remanded the case for a new trial, saying that this case was distinguishable from Mu'Min, both on the facts and the law. Brown v.State, 586 So.2d 991 (Ala.Cr.App. 1991). The Alabama Supreme Court reversed this Court's judgment, stating that Mu'Min controlled and that Brown's conviction was due to be affirmed on that ground. Brown v.State, 632 So.2d 14 (Ala. 1992). While the case was pending on remand, the United States Supreme Court released Powers v. Ohio, 499 U.S. 400
(1991), which applied Batson v. Kentucky, 476 U.S. 79 (1986), to white defendants. Brown is white. On remand from the Alabama Supreme Court, we applied Powers and remanded the case to the trial court for a Batson
hearing. Brown v. State, 632 So.2d 17 (Ala.Cr.App. 1992). Brown's convictions and his death sentence were affirmed in 1995. Brown v.State, 686 So.2d 385 (Ala.Cr.App. 1995), aff'd, 686 So.2d 409 (Ala. 1996), cert. denied, 520 U.S. 1199 (1997).
In January 1998, Brown filed a Rule 32, Ala.R.Crim.P., petition attacking his convictions and death sentence. After a hearing, the trial court denied the petition in a thorough 23-page order; this appeal followed.
The State's evidence at trial tended to show the following. On August 10, 1987, LeMonte's parents discovered the mutilated bodies of Linda LeMonte and her daughter, Sheila Smoke, in LeMonte's home in Montgomery. LeMonte had been stabbed numerous times and her throat had been cut. Smoke had been stabbed four times; the handle of the knife was protruding from her navel when the body was found. Smoke had also been sexually abused. A Polaroid photograph of LeMonte's dead body was found at the murder scene. Brown's fingerprints were on the photograph. A Polaroid camera was found on the sofa. Brown's fingerprints were also discovered on the film in the camera.
When reviewing a trial court's ruling on a postconviction petition, this court must determine whether the trial court abused it discretion.Jones v. State, 724 So.2d 75 (Ala.Cr.App. 1998); Elliott v. State,601 So.2d 1118 (Ala.Cr.App. 1992). The judge in this case, Judge Charles Price, also presided over Brown's trial and was in a much better position than this Court to evaluate Brown's claims because of his personal knowledge of the facts surrounding the allegations. Moreover, this Court must affirm a trial court's denial of a postconviction petition if the ruling is correct for any reason. Roberts v. State, 516 So.2d 936
(Ala.Cr.App. 1987); Jenkins v. State, 516 So.2d 935 (Ala.Cr.App. 1987).
 I.
Brown initially argues that he was denied his right to exercise his peremptory strikes, his right to challenge prospective jurors for cause, and his right to have prospective jurors answer questions truthfully when one prospective juror, during voir dire examination, failed to disclose that he had been the victim of an armed *Page 5 
robbery. He contends that this juror misconduct denied him a fair trial.
This Court has noticed an increased number of death-row inmates raising juror-misconduct claims. Over the past several years the following claims have been made: an allegation that a deputy sheriff, who was a witness for the state, had daily contact with jurors and that that contact prejudiced the defendant, Pierce v. State, [Ms. CR-96-1668, March 2, 1999] ___ So.2d ___ (Ala.Cr.App. 1999); an allegation that a potential juror, during jury selection, discussed his opinion of the case with other potential jurors, Burgess v. State, [Ms. CR-93-2054, November 20, 1998] ___ So.2d ___ (Ala.Cr.App. 1998); an allegation that the defendant was prejudiced when, during trial, a juror telephoned a member of the district attorney's office who was not involved in prosecuting the case, Pilleyv. State, 789 So.2d 870 (Ala.Cr.App. 1998) an allegation that jurors used extraneous material during deliberations, McNair v. State, 706 So.2d 828
(Ala.Cr.App. 1997), cert. denied, 523 U.S. 1064, 118 S.Ct. 1396 (1998); an allegation that potential jurors heard discussions about the case during jury selection, Price v. State, 725 So.2d 1003 (Ala.Cr.App. 1997), aff'd, 725 So.2d 1063 (Ala. 1998), cert. denied, 523 U.S. 1064,119 S.Ct. 1809 (1999); an allegation that a juror, while in a hotel room during sequestration, heard someone outside the room shouting "Guilty",Clemons v. State, 720 So.2d 961 (Ala.Cr.App. 1996), aff'd, 720 So.2d 985
(Ala. 1998), cert. denied, 523 U.S. 1064, 119 S.Ct. 907 (1999); an allegation that a juror failed to disclose that he had been the victim of a crime, Tomlin v. State, 695 So.2d 157 (Ala.Cr.App. 1996); an allegation that the foreman of the jury failed to disclose during voir dire examination that he had been a police officer in another state, State v.Freeman, 605 So.2d 1258 (Ala.Cr.App. 1992).
Here, in the original Rule 32 petition, counsel made a general allegation that prospective jurors failed to answer voir dire questions truthfully. The petition stated:
 "During the voir dire of Mr. Brown's case, prospective jurors failed to answer questions accurately and to disclose information asked of them. The failure of these jurors to disclose crucial information deprived Mr. Brown of his right to be tried by an impartial jury, and his right to strike a petit jury from a panel of fair-minded, impartial prospective jurors, and his right to have questions answered truthfully by prospective jurors to enable his counsel to exercise their discretion wisely in exercising their peremptory strikes protected by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and Alabama law. United States v. Perkins, 748 F.2d 1519, 1529 (11th Cir. 1984); State v. Freeman, 605 So.2d 1258
(Ala.Crim.App. 1992); Clark v. State, 551 So.2d 1091
(Ala. 1989) (conviction reversed where one juror did not reveal during voir dire that he had previously served as juror in another case.)"
After the trial court ordered that only the ineffective-assistance-of-counsel claim would be addressed at the hearing, Brown moved to reconsider the dismissal of the juror-misconduct claim and filed an amended petition. That amended petition alleged the following:
 "During the voir dire of Mr. Brown's case, prospective jurors failed to answer questions accurately and to disclose information asked of them. Specifically, several jurors failed to answer accurately whether [they] had previously served as jurors, whether they or their families had been victims of crime, whether they or their families were members of law enforcement, whether they *Page 6 
were personally close [to] anyone who was a law enforcement officer in Montgomery, whether they knew the victims in this case, whether they had grandchildren under 15 years of age, whether they were involved in a mental health profession, whether they were retired military, whether they consider religion an important part of their lives, whether they have a habit of reading the Bible every day, whether they had strong beliefs against the use of alcoholic beverages, whether they had views about the death penalty, and whether they understood the legal process. The failure of jurors to disclose such crucial information deprived Mr. Brown of his right to be tried by an impartial jury, and his right to strike a petit jury from a panel of fair-minded, impartial prospective jurors, his right to have questions answered truthfully by prospective jurors to enable his counsel to exercise their discretion wisely in exercising their peremptory strikes, and his rights to due process, a fair trial, equal protection and a reliable sentencing protected by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and Alabama law. United States v. Perkins, 748 F.2d 1519, 1529
(11th Cir. 1984); State v. Freeman, 605 So.2d 1258
(Ala.Crim.App. 1992); Clark v. State, 551 So.2d 1091
(Ala. 1989) (conviction reversed where one juror did not reveal during voir dire that he had previously served as juror in another case)."
Our review of the filings reflects that this claim was not adequately pleaded to warrant any further proceedings in the trial court. The original petition made only a blanket assertion that jurors failed to answer questions; it did not identify specific questions or jurors. The amended petition did point out specific questions that were not answered, but it too failed to identify specific jurors who failed to answer. The way Brown's allegations were framed made it impossible for the State to defend against this claim. In an attempt to clarify the issue, the State, several days before the scheduled hearing, moved the court to order Brown to amend the claim to state "which juror committed which act of misconduct." Brown responded by filing another general claim of juror misconduct. However, in this filing he did identify jurors and specific questions, which, he alleged, the jurors failed to answer. However, Brown again failed to say what juror failed to respond to what question.[2] The trial court could have correctly found that Brown's claim was not specific enough to satisfy the requirements of Rule 32.6(b), Ala.R.Crim.P.[3]
However, the trial court allowed Brown to present testimony concerning this issue at the hearing. Evidence was presented *Page 7 
that one juror failed to disclose that he had been the victim of a robbery.
 A.
Before we reach the merits of this claim we must determine if the issue is the proper subject of a postconviction petition. The State argues that this claim is precluded because it could have been, but was not, raised at trial or on direct appeal. See Rule 32.2(2) and (5), Ala.R.Crim.P. The State further argues that there was no proof that this claim constituted newly discovered evidence, Rule 32.1(e), Ala.R.Crim.P. Rule 32.1(e) states that a defendant who has been convicted of a criminal offense may seek relief on the following basis:
 "Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
 "(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
 "(2) The facts are not merely cumulative to other facts that were known;
 "(3) The facts do not merely amount to impeachment evidence;
 "(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
 "(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received."
Brown argues that this claim constitutes newly discovered evidence and that it was thus properly raised for the first time in this postconviction petition. He cites this Court's decision in State v.Freeman, 605 So.2d 1258 (Ala.Cr.App. 1992),[4] to support his claim. The State counters this argument by asking this Court to overrule our holding in Freeman because, it says, the decision conflicts with other caselaw addressing juror misconduct. See Holladay v. State, 629 So.2d 673
(Ala.Cr.App. 1992).
In Freeman, this Court held that an issue of juror misconduct constituted newly discovered evidence because counsel was not aware of the alleged misconduct until two weeks before the evidentiary hearing on the postconviction petition. However, the Freeman court did not address the other prerequisites for newly discovered evidence contained in Rule 32.1(e). Freeman conflicts with our holdings in Holladay and State v.Whitley, 665 So.2d 998 (Ala.Cr.App. 1995). In Holladay, which was released after Freeman, this Court held that we could not consider a claim of juror misconduct because there was no evidence that this claim could not have been raised on direct appeal. More recently, in Whitley we held that the trial court erred in addressing a juror-misconduct claim on the merits because the record reflected that the appellant was aware of the alleged misconduct before he filed his motion for a new trial. We further stated that there was no evidence that this evidence constituted newly discovered evidence. See also Boyd v. State, 746 So.2d 364
(Ala.Cr.App. 1999). *Page 8 
We write to clarify the law as it relates to allegations of juror misconduct made the first time in postconviction petitions. Before a claim of juror misconduct may be addressed on the merits in a postconviction petition the petitioner must meet the requirements for newly discovered evidence contained in Rule 32.1(e), Ala.R.Crim.P. To the extent that this holding conflicts with Freeman, that case is hereby overruled. We hope that our holding today will encourage attorneys to raise allegations of juror misconduct in a motion for a new trial. It is the rare case where a juror-misconduct claim cannot be raised in a motion for a new trial. Moreover, waiting to raise this claim until a postconviction petition is filed — in this case 10 years after the conviction — puts all parties at a distinct disadvantage because of the passage of time. Also, to satisfy the requirements of newly discovered evidence a petitioner must show that the facts establish that he is innocent of the crime. This is a steep hurdle. Here, Brown's own testimony at the penalty phase of his capital trial, when asked if he remembered killing Linda LeMonte was: "The actual killing, no. But, I think the — evidence has indicated that I did it and I accept that."
We observe that the purpose of the postconviction petition was succinctly stated by this Court in Hayes v. State, 417 So.2d 579, 581-82
(Ala.Cr.App. 1982):
 "In the search for truth in our judicial system and in the implementation of due process, the writ of error coram nobis [the predecessor to Rule 32] serves a valuable role. Since its recognition in Johnson v. Williams, 244 Ala. 391, 394, 13 So.2d 683 (1943), the writ has served as a `remedy for one who claims that his incarceration is due to failure to observe that fundamental fairness essential to every concept of justice, even after a sentence has been duly affirmed by the highest court of the state.' Johnson, 244 Ala. at 394. The writ serves a broad purpose.
 "`It lies to set aside a conviction obtained by duress or fraud, or when by some excusable mistake or ignorance of accused, and without negligence on his part, he has been deprived of a defense which he could have used at his trial, or where facts have been concealed at the trial which, if known, would have prevented a conviction, and the accused cannot at the time present such matter in a motion for a new trial, on appeal or other existing statutory proceeding. . . . We do not intend here to make a complete statement of all the circumstances when the writ will lie. But what is said serves to illustrate its broad purpose.' Brown v. State, 250 Ala. 444, 446, 35 So.2d 518
(1948).
 "However, the writ of error coram nobis is often abused and its very purpose frustrated and perverted by that abuse. `Often such petitions are based upon assertions of alleged facts, which have originated in the fertile minds of cunning criminals.' Wiman v. Argo, 308 F.2d 674 (5th Cir. 1962).
 "`The petitioners take great comfort in the fact that no matter how frivolous their allegations or how utterly deficient their pleadings may be, the state must respond to these ofttimes unintelligible pleadings, letters or memorandums, and/or proceed to costly and time-consuming hearings. The petitioners have nothing to lose, for they know that the very least they can obtain is a day away from their prison surroundings.' Cooper v. Wiman, 273 Ala. 699, 701, 145 So.2d 216 (1962)."
(Emphasis added.)
Here, even though Brown argued that this evidence was newly discovered, he *Page 9 
made no effort, and indeed could not, satisfy the requirements of Rule 32.1(e). Thus, this claim was precluded because of Brown's failure to satisfy Rule 32.1(e),[5] i.e., that he was innocent of the murders.
 B.
Because of the conflicting law at the time that the petition was filed we will give Brown every procedural benefit and address this claim on its merits. We also hope that addressing this issue now will foreclose later litigation in this case. This case was pending on direct appeal from May 1988, when the notice of appeal was filed, until December 1996, when the certificate of judgment was issued and the direct appeal became final.
In Tomlin v. State, 695 So.2d 157 (Ala.Cr.App. 1996), this Court addressed the factors that must be examined when a court is reviewing the claim of a prospective juror's failure to answer a question on voir dire. This Court stated:
 "`"[S]ome of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about."'
 "Johnson v. State, 536 So.2d 957, 958 (Ala.Cr.App. 1987), cert. denied, 490 U.S. 1046, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989) (quoting Smithson v. State, 50 Ala. App. 318, 320-21, 278 So.2d 766 (1973)). See also Campbell v. Williams, 638 So.2d 804, 813 (Ala. 1994), cert. denied, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). `Thus, the facts in each case must be considered individually and much will remain in the discretion of the trial judge.' Parish v. State, 480 So.2d 29, 30 (Ala.Cr.App. 1985)."
Tomlin, 695 So.2d at 170.[6]
It is undisputed that prospective jurors were asked whether they had been the victim of a crime. This Court has taken judicial notice of Brown's trial record and has reviewed the voir dire examination. *Page 10 Hull v. State, 607 So.2d 369 (Ala.Cr.App. 1992). The record reflects that this prospective juror responded to five questions asked during voir dire examination and appeared to be forthright in those answers. There is no assertion that this juror failed to disclose other information during voir dire. The juror when questioned about his failure to respond stated:
 "Q [defense counsel]: When you lived in New Mexico, were you ever a manager of a Circle K store?
"A [juror]: That's correct. I had a night job there.
"Q: While working there, were you ever robbed?
"A: That's correct.
"Q: When did this happen?
 "A: I don't remember. It's been a long time ago. I don't remember. I mean, I almost forgot about it. It's been a very long time ago. I've been back here since `78, and it happened maybe [8], 10 years before that."
". . . .
 "Q [state attorney]: Had you put this out of your mind when you moved to Montgomery?
 "A: I had forgot about it. I got divorced; and being robbed a few years before, that was not the uppermost thing on my mind.
 "Q: So you had pretty much put this out of your mind; right?
 "A: I had. Really, I guess I hadn't — on a conscious level, I had forgotten it; yeah.
 "Q: So at the time when Judge Price asked if anyone had been a victim of a crime, you weren't thinking about this, were you?
 "A: I don't think I was. If I had, I would have said so.
 "Q: So you didn't intentionally withhold any information from the court, did you?
 "A: No, I didn't. I have no reason for doing that. I wasn't particularly happy about being on the jury any way because I hadn't been at my new job that long."
It appears from a review of both the voir dire and the postconviction hearing that this juror did not intentionally fail to disclose information. Also, Brown was tried in 1987. The juror stated that he had been robbed while working at a Circle K approximately 10 years before he moved to Montgomery in 1978. The robbery occurred approximately 20 to 21 years before Brown's trial. Also, when Brown's trial attorney, William Blanchard, was questioned he stated:
 "Q [state attorney]: Would it matter to you in making your decision if a veniremember stated that he had been a victim of a crime but it had been probably 20 years in his past?
 "A: In just a general situation? Not this case, but in any situation?
"Q: Generally first. Yes.
 "A: The length of the time — yes, that could have some impact."
Of those factors, we conclude that two are pertinent here: Whether any juror had been the victim of a crime was material to Brown's exercise of his peremptory strikes; and when questioned about the robbery, the juror was able to relate the specific facts surrounding the event.
Having evaluated the relevant factors, we must now decide whether the situation presented by this case warrants the reversal of Brown's convictions and death sentence. The State argues that the standard should not be whether the action "might have unlawfully influenced its verdict," see Roan v. State, 225 Ala. 428, 435, 143 So.2d 454, 460 (1932), but whether "probable *Page 11 
prejudice" was shown, see Freeman v. Hall, 286 Ala. 161, 238 So.2d 330
(1970). However, the State also asserts in brief, "The State recognizes that this Court is unable to change Alabama Supreme Court precedent."
Our reading of the Alabama Supreme's Court recent decision in Dawsonv. State, 710 So.2d 472 (Ala. 1997), on remand, 710 So.2d 476
(Ala.Cr.App. 1998), indicates that the Supreme Court has departed from the standard advanced in Roan, and embraced the standard of whether prejudice was shown, see Reed v. State, 547 So.2d 596 (Ala. 1989), on remand, 547 So.2d 599 (Ala.Cr.App. 1989). This Court, in Knight v.State, 710 So.2d 511 (Ala.Cr.App. 1997), stated the following when applying Dawson:
 "Even more recently, the Alabama Supreme Court, in Dawson v. State, 710 So.2d 472 (Ala. 1997), reversed this court's holding that juror misconduct warranted a new trial, because `no prejudice to the defendant could have resulted from the extraneous information.' Dawson, 710 So.2d at 476. We note that, in reaching its decision, the Supreme Court looked to its opinion in Reed v. State, [547 So.2d 596 (Ala. 1989)], the principal decision upon which this court relies in reaching our decision in this case. In the present case, the juror misconduct introduced no new evidence that would have been crucial in resolving such an issue. Nor was there any evidence that the misconduct prejudiced the appellant in any way.
 "We believe that the holdings in Dawson v. State and Ex parte Thomas[,666 So.2d 855 (Ala. 1995)] are in accord with the `harmless error' rule, as set out in Rule 45, Ala.R.App.P., under which an appellate not only must show error, but also must demonstrate that such error resulted in a substantial injury to the appellant's rights in order to warrant a reversal of his conviction. See[,] e.g., Kolmetz v. State, 600 So.2d 389, 391 (Ala.Crim.App. 1991), cert. denied, 600 So.2d 396 (1992)."
710 So.2d at 518. (Emphasis added.) The holding in Dawson is also in line with other cases that have held that issues such as the wrongful admission of a confession and an erroneous jury instruction on reasonable doubt can be harmless if a reviewing court can say that the error was harmless beyond a reasonable doubt. Arizona v. Fulminante, 499 U.S. 279
(1991); Sullivan v. Louisiana, 508 U.S. 275 (1993). See also Flynn v.State, 745 So.2d 295 (Ala.Cr.App. 1999); Davis v. State, 682 So.2d 476
(Ala.Cr.App. 1995).
Here, there is absolutely no evidence that Brown was prejudiced by the lack of information concerning the juror's involvement as a victim in a robbery. The juror testified at the postconviction hearing that the fact that he had been robbed had had no effect on his impartiality. Nor was there any allegation that this juror discussed the situation with any other jurors. The jury unanimously recommended that Brown be sentenced to death. There is no greater support for finding that Brown was not prejudiced than Brown's own words when he testified at the penalty phase of his capital trial. When asked if he remembered killing Linda LeMonte he stated, "The actual killing, no. But, I think the — evidence has indicated that I did it and I accept that."
As the United States Court of Appeals for the Fourth Circuit stated inSherman v. Smith, 89 F.3d 1134, 1137 (4th Cir. 1996), cert. denied,519 U.S. 1091 (1997):
 "Criminal defendants in this country are entitled to a fair, but not a perfect *Page 12 
trial. `[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial,' and the Constitution does not demand one. United States v. Hasting, 461 U.S. 499, 508, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983)."
We have balanced the right of an accused to have questions answered truthfully during voir dire examination against society's interest in the finality of criminal verdicts. Our rationale for finding no juror misconduct in this case, is due, in part, to the total absence of state action in any alleged misconduct. A juror is a private citizen, an independent entity, not subject to state authority. The constitutional protections afforded an accused apply only to protect the accused from action by the state or actions by an individual acting as an agent of the state. Rankin v. State, 541 So.2d 577 (Ala.Cr.App. 1988). The prohibition against affording an accused these constitutional protections in regard to conduct by a private citizen has been applied to the Fourth Amendment's protection against unreasonable search and seizures, Coolidgev. New Hampshire, 403 U.S. 443 (1971); Woods v. State, 695 So.2d 636
(Ala.Cr.App. 1996); Kennedy v. State, 486 So.2d 493 (Ala. 1986), and to a due process analysis when evaluating the voluntariness of a confession,Colorado v. Connelly, 479 U.S. 157, 166 (1986) ("[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." 479 U.S. at 166). This Court has also recognized that Brady v.Maryland, 373 U.S. 83 (1963), which mandates that exculpatory information in the possession of the state be disclosed to an accused, has no force on private citizens. See Pilley v. State, 789 So.2d 870, 881
(Ala.Cr.App. 1998) ("A defendant's statement to a private citizen is not within the purview of Rule 16.1 [discovery] and need not be disclosed.")[7] Neither the State nor an accused can control whether a prospective juror truthfully answers voir dire questions. Each potential juror answers only to his or her own conscience. As the Supreme Court of California stated in In re Hamilton, 84 Cal.Rptr.2d 403,417, 975 P.2d 600 (1999):
 "`[T]he criminal justice system must not be rendered impotent in quest of an ever-elusive perfection. . . . [Jurors] are imbued with human frailties as well as virtues. If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias.' (Carpenter, supra, 9 Cal.4th at pp. 654-655, 38 Cal.Rptr.2d 665, 889 P.2d 985.)"
Brown is not entitled to a new trial. The trial court correctly denied Brown relief on this claim.
 II.
Brown makes numerous allegations that he was denied his constitutional right to the effective assistance of counsel at both the guilt phase and penalty phase of his trial. Brown was represented by William Blanchard and Charles Hollifield.
When reviewing claims of ineffective assistance of counsel, we must determine if counsel's performance was deficient and, if so, whether the appellant *Page 13 
suffered any prejudice from the deficient performance. Strickland v.Washington, 466 U.S. 668 (1984).
 "`The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). "Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall `outside the wide range of professionally competent assistance.' [Strickland,] 466 U.S. at 690, 104 S.Ct. at 2066." Daniels [v. State], 650 So.2d [544] 552 [(Ala.Cr.App. 1994), cert. denied, 488 U.S. 1051 (1995)]. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531
(Ala.Cr.App. 1985). "This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance." Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326
(Ala.Cr.App. 1994).'"
 Callahan v. State, 767 So.2d 380, 384 (Ala.Cr.App. 1999), quoting Bui v. State, 717 So.2d 6, 12-13 (Ala.Cr.App. 1997).
To prevail on a claim of ineffective assistance of counsel in a death-penalty case, a challenging party must show that the defendant would not have been sentenced to death, but for counsel's ineffective assistance.
 "`When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'"
Bui, 717 So.2d at 13, quoting, Strickland, 466 U.S. at 697.
 A.
Initially, Brown argues that his counsel's performances were deficient because, he says, the statutory compensation for attorneys in Alabama is too low, thus, resulting in inadequate representation. Section 15-12-21, Code of Alabama 1975, limits attorney fees to $1,000 for each attorney for out-of-court work in a capital case.[8] Brown asserts that this statutory cap injured him because both of his attorneys were solo practitioners and could not devote the time they needed to his case.
The trial court, in its order denying the petition on this ground, stated:
 "Brown alleges that he received ineffective assistance of counsel due to the limitations on compensation of court-appointed capital defense attorneys. To *Page 14 
support this claim, Brown presented the testimony of Bill Blanchard, one of his trial counsel. Blanchard testified that he felt that they were inadequately compensated because there was no way that they could counter the resources of the State. He also stated that he would have wanted to investigate more about Brown's life when he lived in Huntsville as a child. However, Blanchard stated, he could not investigate that aspect of Brown's life because there were limited funds from which to pay Phil Sanchez, their investigator.
". . . .
 "Brown has failed to produce any evidence about what could have been learned from investigating the Huntsville years. Brown has failed to demonstrate to this Court that, but for the alleged ineffectiveness of counsel for failing to investigate this one area of his life, the result of his trial would have been different."
Blanchard and Hollifield testified at the postconviction hearing. Both said that the fact that the statutory fee was limited was a consideration in the resources they devoted to Brown's case but neither said that they performed less effectively because of the cap on attorney fees. Blanchard did testify that he had wanted to investigate the time that Brown lived in Huntsville when he was a child. However, as the trial court noted, there was absolutely no evidence of what such an investigation would have revealed. Brown has failed to satisfy the Strickland test. We note that the same attorneys who represented Brown at trial also represented him on direct appeal. Their performance on direct appeal was not ineffective.
 B.
Next, Brown argues that he was denied the effective assistance of counsel because, he says, counsel failed to present adequate evidence of Brown's mental illness.
A review of the transcript of the Rule 32 hearing reflects that no evidence was presented to support this allegation. The following excerpt contains the only references to Blanchard's and Hollifield's presentation of mental-health evidence:
 "Q [defense counsel]: Do you think the defendant's mental health was an issue in this case?
"A [William Blanchard]: Yes.
"Q: Why?
 "A: Well, as you've indicated — the nature of the crime, for one thing. We knew his history of having committed the other three murders earlier on. We knew the circumstances of those murders. We read about them. We knew that there was a deal of similarity between those cases and these cases. And it simply appeared to us that there was enough there to warrant an inquiry into his mental condition.
 "Q: And what kinds of things would you want the jury and judge to know in terms of his mental health, Mr. Brown's mental health, what kinds of things would you want the jury and judge to know before imposing a sentence?
 "A: I'm not sure I understand your question. Could you rephrase that?
 "Q: If he had serious mental-health problems, would you want the jury to know that?
"A: Oh, certainly. Sure.
"Q: Would you want the judge to know that?
"A: Yes. *Page 15 
 "Q: Do you think those kinds of things would have been helpful in this case?
"A: Yes."
Also, during Hollifield's testimony the following occurred:
 "Q [defense counsel]: Do you think the defendant's mental health was an issue in this case?
"A: I do.
 "Q: In general, when you have a crime like this, or specifically in this case, when you have a crime like this, do you think it would be important for the jury and judge to know about Mr. Brown's mental health?
"A: State that question again, please, sir.
 "Q: In this case, do you think it was an important fact for the jury to know — assuming Mr. Brown had mental-health problems, do you think that would be an important fact for the jury and judge to know before imposing sentence?
 "A: Well, we did. Yes. We did bring those facts before the jury."
Brown's attorneys were asked very few questions at the hearing and the limited questions they were asked concentrated on the cap on attorney fees. Blanchard and Hollifield were never asked about the expert who testified at Brown's trial nor about any other evidence of mental illness that could have been presented. Neither were asked if their decision not to present this evidence was trial strategy. Gooch v. State, 717 So.2d 50
(Ala.Cr.App. 1997). Two experts, a neuropsychologist and a neuropsychiatrist, did testify at the postconviction hearing that Brown suffered from an organic personality disorder but that he was not insane. The trial court made the following findings about this claim:
 "No expert could testify that Brown's mental deficits, if they exist, had any causal link to the crimes he committed. Brown's experts offered mere speculation that his conditions `could have' had an effect on his behavior in murdering the two victims in this case. Therefore, trial counsel did not perform ineffectively by failing to secure the testimony of a neuropsychologist."
The court's findings are supported by the record. The trial court correctly denied Brown relief on this claim.
 C.
Brown also lists numerous other allegations of ineffective assistance of counsel; however, no proof in support of any of the other allegations was presented at the postconviction hearing, and the petition contained only general assertions.
The amended petition contained a laundry list of general assertions that Brown's counsel's performances were deficient because, he says, they failed "in numerous instances to make objections contemporaneously," and failed to object "contemporaneously to numerous instances of prosecutorial misconduct." In each instance there was no testimony elicited from the attorneys concerning these allegations. Counsel did not question Brown's trial attorneys about whether their failure to object was based on trial strategy. Gooch v. State, 717 So.2d 50 (Ala.Cr.App. 1997). There was absolutely no evidence that satisfied the requirements of Strickland.
As the trial court stated, "Brown raised twenty-three (23) claims of ineffective assistance of counsel. He failed to present any evidence whatsoever on twenty-one (21) of those claims." Relief on the following claims was properly denied because Brown failed to satisfy his burden of proof. Rule 32.3, Ala.R.Crim.P.
 (1) "Trial counsel failed to object to D.K. serving on Mr. Brown's jury." (Brown's brief at 28.)
 (2) "Trial counsel failed to object adequately to numerous instances of *Page 16 
prosecutorial misconduct." (Brown's brief at 29.)
 (3) "Trial counsel failed to argue adequately that Alabama's death penalty statute is unconstitutional." (Brown's brief at 34.)
 (4) "Trial counsel failed to object adequately to the trial court's improper instructions." (Brown's brief at 35.)
 (5) "Trial counsel failed to argue adequately that the trial [judge] should have recused himself." (Brown's brief at 37.)
 (6) "Trial counsel failed to argue that death by electrocution is cruel and unusual." (Brown's brief at 37.)
 (7) "Trial counsel failed to object to Mr. Brown's death sentence as unconstitutional because it is imposed pursuant to a pattern of racial bias." (Brown's brief at 39.)
 III.
Brown also argues that the State violated Brady v. Maryland, 373 U.S. 83
(1963), by failing to disclose evidence. As the trial court noted, there was absolutely no evidence presented to substantiate this claim. Thus, Brown failed to meet his burden of proof. Rule 32.3, Ala.R.Crim.P.
 IV.
Brown raises numerous other issues, which are procedurally barred in a postconviction proceeding because they could have been, but were not, raised at trial or on the direct appeal or were addressed on direct appeal. Rule 32.2(2), (4) and (5).
 "This court has recognized that `[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.' State v. Tarver, 629 So.2d [14] at 19 [(Ala.Cr.App. 1993)]. See Horsley v. State, 675 So.2d 908
(Ala.Cr.App. 1996); Grayson v. State, 675 So.2d 516
(Ala.Cr.App. 1995), cert. denied, 519 U.S. 934, 117 S.Ct. 309, 136 L.Ed.2d 225 (1996); Brownlee [v. State], 666 So.2d [91] at 93 [(Ala.Cr.App. 1995)]; Cade v. State, 629 So.2d 38 (Ala.Cr.App. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221
(1994)."
Bui v. State, 717 So.2d 6, 27-28 (Ala.Cr.App. 1997).
The following claims are procedurally barred because they could have been, but were not, raised at trial or on direct appeal:
 (1) That the prosecutor engaged in misconduct throughout the trial.
 (2) That Alabama's death penalty statute is unconstitutional because it narrows the class of people to whom the death penalty may be applied.
 (3) That Brown was prejudiced by the State's introduction of inflammatory photographs of the victims.
 (4) That the trial court erred in failing to suppress evidence discovered by police.
 (5) That the trial judge erred in not recusing himself from Brown's trial.
 (6) That death by electrocution is cruel and unusual punishment.
The following claims are procedurally barred because they were addressed on direct appeal. Rule 32.2(4), Ala.R.Crim.P.
 (1) That the trial court erred in denying Brown's motion for a mistrial because the district attorney used a subpoena duces tecum to obtain privileged information. 686 So.2d at 403.
 (2) That there was not sufficient evidence to show that the killings were especially heinous, atrocious, or cruel as compared to other capital offenses. 686 So.2d at 407. *Page 17 
 (3) That the trial court's voir dire examination was deficient because it failed to ask if the prospective jurors would automatically vote for death if Brown was convicted of capital murder. 686 So.2d at 420.
 (4) That the trial court's jury instructions were erroneous because no instruction on intent was given. 686 So.2d at 422.
 V.
Counsel last argues that Brown's capital prosecution and conviction were racially motivated because Brown is black and the victims were white. He states in brief, "Racial bias influenced the prosecutor's decision to indict Mr. Brown as evidenced by the ways in which other black defendants in the judicial circuit have been indicted for capital murder for the killing of white people." Raymond Eugene Brown is white, contrary to appellate counsel's assertion.
For the foregoing reasons, the trial court did not abuse its discretion in denying Brown's postconviction petition.
AFFIRMED.
Long, P.J., and McMillan, Cobb, Baschab, and Fry, JJ., concur.
[1] In 1961, when Brown was 14 years old, he was convicted of stabbing to death his aunt, his grandmother and his great-grandmother. He was sentenced to three consecutive terms of life imprisonment. He was paroled in 1973. His parole was revoked in 1980 when he was arrested for assault. In June 1986, Brown was paroled for a second time. The events that formed the basis of the capital convictions in this case occurred in 1987.
[2] We note that Brown subpoenaed all 12 jurors to testify at the postconviction hearing. It appears that Brown was using this petition as a "fishing expedition." The only evidence presented at the hearing was that one juror failed to respond to the question whether he had been the victim of a crime. No other evidence was introduced concerning any of the myriad of other generalized assertions of juror misconduct. The defense tactics rendered the State helpless to defend against the allegations at the postconviction hearing.
[3] Rule 32.6(b), states:
 "The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."
(Emphasis added.)
[4] Freeman was convicted of raping and murdering a two-and-one-half-year-old child and was sentenced to death. The foreman on the jury that convicted Freeman was a former police officer who had handled child sexual abuse cases in Pennsylvania. This juror failed to disclose on voir dire that he had been a police officer.
[5] This ruling is in line with holdings in other states addressing similar issues. See Dukes v. State, (No. CV-950324189S, March 20, 1996) (Conn.Super.Ct.) (not reported in A.2d) (juror misconduct claim must meet the definition of newly discovered evidence, i.e., must be likely to produce a different result in any subsequent trial); Lewis v. State,901 P.2d 448 (Alaska Ct. App. 1995) (claim of juror misconduct in postconviction petition must meet definition of newly discovered evidence, i.e., evidence would have produced a different result). Cf.Cigainero v. State, 321 Ark. 533, 906 S.W.2d 282 (1995) (juror misconduct claim could not be raised in postconviction proceeding but must be raised in a motion for a new trial).
[6] The Alabama Supreme Court has failed to adopt the standard of review approved by the United States Supreme Court in McDonough v. PowerEquipment, Inc. v. Greewood, 464 U.S. 548 (1984), for juror-misconduct issues. This standard requires that a party establish that a juror failed to answer honestly a material question on voir dire and that a correct response would have provided a valid basis for a challenge for cause.464 U.S. at 556.
Our neighboring state of Florida has stated that a party alleging that a juror failed to respond truthfully must show: a) that the question propounded is straightforward and not susceptible to misinterpretation, b) that the juror gave an untruthful answer, c) that the question concerned a material and relevant matter to which counsel would reasonably be expected to give substantial weight in the exercise of his peremptory challenges, d) that there were peremptory challenges remaining when question was asked, and e) that counsel states that he would have peremptorily excused the juror had the juror been truthful. Coleman v.State, 718 So.2d 827 (Fla. 4th D.C.A. 1998).
[7] Though we are explicitly overruling our holding in Freeman we nevertheless find the situation in Freeman to be more egregious than that presented by the instant case because the juror who failed to disclose information in Freeman was a police officer.
[8] In June 1999 the Legislature amended § 15-12-21 to increase the attorney fees for appointed work at the trial level. Act No. 99-427, Ala. Acts 1999. The new fee limits are based on the severity of the crime. There is no limit on the total fees that may be claimed for an attorney representing a defendant charged with a capital offense or with an offense that carries a possible sentence of life imprisonment without parole.